UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Andrew Davis, on behalf of himself and all others similarly situated, *Plaintiff*, v. Macy's Retail Holdings, Inc., a/k/a Macy's Inc., *Defendant*. | Civil No. 3:17-cv-1807 (JBA) September 19, 2018 |

## RULING ON DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL INDIVIDUAL ARBITRATION

Plaintiff Andrew Davis brings suit against his former employer Macy's Retail Holdings, Inc. individually and as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), alleging failure to properly compensate Plaintiff and other similarly situated employees for hours worked in excess of 40 hours per week (Count One), and as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) alleging unlawful classification of Plaintiff and the members of the Class as exempt employees and failure to pay proper overtime compensation under the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58 (Count Two). Defendant moves [Doc. # 11] to stay all claims and compel individual arbitration based on an arbitration agreement to which Plaintiff and Defendant are parties. Plaintiff opposes [Doc. # 26], maintaining that the arbitration agreement is not valid or enforceable and that any assent to it was induced by fraudulent misrepresentations by Defendant. For the reasons that follow, Defendant's motion is granted.

### I. Background

Defendant uses a four-step employment dispute resolution program called "Solutions InSTORE." (Ex. 1 (Ripak Decl.) to Def.'s Mot. to Compel Arbitration [Doc. # 12-1] ¶ 9.) The first three steps are internal, but the fourth step is binding arbitration administered by the American

Arbitration Association ("AAA"). (*Id.*) Within thirty days of hire, employees must choose whether they wish to participate in the arbitration step in any future employment disputes. (*Id.*) If employees want to retain their right to litigate in court, they must complete an election form provided by Defendant and mail it to Solutions InSTORE, postmarked within thirty days of hire. (*Id.*)

If employees agree to resolve any future disputes by arbitration under the InSTORE program and relinquish their right to litigate those disputes in court, the employee simply refrains from completing and returning the election form within the thirty-day period. (*Id.*) At the time of hire, employees electronically sign an acknowledgement form recognizing the parameters and implications of their choice: "I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE." (Ex. B (Acknowledgment Form) to *id.*) Employees are also provided with materials explaining the arbitration step, including a poster, a training video, a program brochure containing the election form (by which employees make their choice), and the Plan Document, which outlines the rules and procedures of the arbitration step. (Ripak Decl. ¶ 20.)

Plaintiff electronically signed the acknowledgement form when he was hired, (Ex. 2 (Veeraraghavan Decl.) to Def.'s Mot. to Compel Arbitration [Doc. # 12-1] ¶ 13; Ex. G to Veeraraghavan Decl.), but subsequently did not return a completed election form opting out of the arbitration step, (Ripak Decl. ¶ 28).

## II. Discussion

In analyzing whether a contract requires arbitration, "'the court applies a standard similar to that applicable for a motion for summary judgment.'" *Schnabel v. Trilegiant Corp.*, 697 F.3d 110,

113 (2d Cir. 2012) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (alteration omitted)). It is therefore "proper (and in fact necessary) to consider extrinsic evidence when faced with a motion to compel arbitration . . . and if the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Philippe v. Red Lobster Restaurants LLC*, No. 15-CV-2080, 2015 WL 4617247, at *2 (S.D.N.Y. Aug. 3, 2015) (internal citations and quotation marks omitted).

The Federal Arbitration Act ("FAA") states, in relevant part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1947). A court may not deny arbitration where there is a valid arbitration agreement that covers the asserted claims. *Id.; see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration" (emphasis in original)). The FAA was designed to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and to "place an arbitration agreement upon the same footing as other contracts, where it belongs." *Dean Witter Reynolds*, 470 U.S. at 220 (internal quotation marks omitted). The Act articulates a "national policy favoring arbitration," preempting any contradictory state judicial or legislative policy, *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)), to which due regard must be given by the court in resolving any ambiguities respecting the enforceability or scope of an arbitration agreement,

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989). Congress articulated this federal policy "to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Id.* at 476.

Defendant maintains that the Court should compel arbitration because the InSTORE program materials constitute a valid agreement to arbitrate employment disputes which covers the FLSA and Connecticut Minimum Wage Act claims asserted by Plaintiff.[1] Plaintiff maintains that the purported arbitration agreement is not an enforceable contract and that there exist "such grounds [] at law or in equity for the revocation" of the agreement under the savings clause of the FAA. Specifically, Plaintiff argues that any assent to the agreement was induced by Defendant's fraudulent misrepresentations. Plaintiff does not dispute that the agreement covers the asserted claims. The Court considers each of Plaintiff's arguments in turn.[2]

### A. Validity of the arbitration agreement

The validity of an arbitration agreement is governed by state contract law principles, *First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995). "The essential terms of a valid contract are an offer, acceptance of that offer, and consideration." *Chiulli v. Chiulli*, 127 A.3d 1146, 1151 (Conn. App. Ct. 2015) (internal quotations omitted).

#### 1. *Offer*

---

[1] While this motion was pending, the U.S. Supreme Court decided that arbitration agreements that contain waivers of the right to participate in class or collective actions are lawful and enforceable. *Epic Sys. Corp. v. Lewis*, 584 U.S. No. 16-285 slip op. (U.S. May 21, 2018).

[2] Defendant concedes that, if the Court compels arbitration, the instant case should be stayed, not dismissed. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested. The FAA's text, structure, and underlying policy command this result.").

Plaintiff argues that the program materials do not constitute a valid offer and are not enforceable because they are confusing, ambiguous, and misleading. (Pl.'s Opp'n to Def.'s Motion [Doc. # 26] at 5-9, 14-17.) Specifically, Plaintiff claims that these program materials are ambiguous as to whether the arbitration step is the automatic conferment of a benefit, exercisable voluntarily by the employee at any time, or an offer of mandatory future arbitration at the irrevocable expense of the employee's ability to bring an action in court. Plaintiff contends that the materials' choice-driven language[3] conflicts with the narrowly prescribed window to preserve legal rights to court proceedings, after which those rights are permanently waived. Plaintiff maintains that the description of the irrevocable waiver of legal rights as an automatic "benefit" misleads the employee as to the nature and consequences of the arbitration step. Plaintiff also argues that this ambiguity should be construed against the drafter, Defendant. *See Hartford Elec. Applicators of Thermalux, Inc. v. Alden*, 169 Conn. 177, 182 (1975) ("Where there is ambiguity, we must construe contractual terms against the drafter.").

Plaintiff urges the Court to depart from the voluminous case law enforcing the Macy's arbitration program[4] and instead adhere to *Weiss v. Macy's Retail Holdings, Inc.*, in which the

---

[3] The materials emphasize benefits and employee autonomy during the dispute resolution process, with language such as "the decision is yours," "[y]ou drive the process," and "[c]omplete and return this form ONLY IF YOU **DO NOT** WANT TO BE COVERED BY THE BENEFITS OF ARBITRATION UNDER SOLUTIONS IN STORE." (Ex. B (InSTORE brochure) to Pl.'s Opp'n [Doc. # 26].)

[4] *See, e.g., Tillman v. Macy's, Inc.*, 735 F.3d 453, 459 (6th Cir. 2013) (holding that the InSTORE materials "clearly inform employees of the nature of the agreement and describe their rights under the arbitration program"); *Crawley v. Macy's Retail Holdings, Inc.*, No. 15civ.2228, 2017 WL 2297018, at *5 (S.D.N.Y. May 25, 2017) (finding that the employee and Macy's "clearly, explicitly, and unequivocally agreed to arbitrate employment disputes" when the employee signed the acknowledgement form and did not return a completed election form); *Allen-White v. Bloomingdales, Inc.*, 225 F. Supp. 3d 254, 259 (D.N.J. 2016) ("[t]here is nothing unclear or deceiving

District Court for the Southern District of New York declined to compel arbitration. 265 F. Supp. 3d 358, 363 (S.D.N.Y. 2017). That court reasoned that the election form by which the employee may opt out was "counterintuitive, ambiguous, and misleading" and conveys the false impression that by signing the form the employee sacrifices a pre-existing right to arbitration and changes the status quo, when in fact by signing the form the employee preserves a pre-existing right to litigate in court and maintains the status quo. *Id.*

After the parties in this case submitted their briefing and after oral argument on the instant motion, the Second Circuit vacated the District Court's holding that the Macy's arbitration agreement was invalid. *Weiss v. Macy's Retail Holdings, Inc.*, No. 17-2219, 2018 WL 3409143 (2d Cir. July 12, 2018). The Second Circuit reasoned that "[a]lthough the somewhat disingenuous references to the 'benefits' of arbitration might better have been avoided, and Macy's would do well to remove the word 'benefits' in the future, neither this unfortunate choice of words nor the remainder of the form renders its meaning incapable of being readily understood." *Id.* at *2.

Here, as in *Weiss* and the many cases enforcing similar arbitration agreements,[5] the InSTORE program materials are consistent and clear with regard to: the time sensitivity of the

---

about any of [the InSTORE] documents"); *Jayasundera v. Macy's Logistics & Operations*, No. 14-CV-7455, 2015 WL 4623508, at *4 (D.N.J. Aug. 3, 2015) (holding that failure to opt out of an arbitration program after receiving notice of it is valid acceptance to constitute an enforceable contract); *Burnett v. Macy's West Stores, Inc.*, No. 1:11-CV-01277, 2011 WL 4770614, at *3 (E.D. Cal. Oct. 7, 2011) (finding that the circumstances indicated the employee's intent to allow his failure to opt out of the program to constitute his acceptance of the offer to enter the program); *Teah v. Macy's Retail Holdings, Inc.*, No. 11-CV-1356, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) (holding that InSTORE materials constitute an enforceable arbitration agreement); *Mount v. Macy's Retail Holdings, Inc.*, No. 12-CV-1081, 2013 U.S. Dist. LEXIS 189793 (D.N.J. Jan. 8, 2013) (same); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122 (C.D. Cal. 2011) (same).
    [5] See supra at n.4.

offer,[6] how to opt out of the arbitration step if the employee so desires,[7] and the resulting

permanent relinquishment of legal rights.[8] *See, e.g., Tillman's v. Macy's Retail Holdings, Inc.*, 735

F.3d 453, 459 (6th Cir. 2013) (the InSTORE materials "clearly inform employees of the nature of

the agreement"); *Allen v. Bloomingdales, Inc.*, 225 F. Supp. 3d 254, 258 (D.N.J. 2016) ("The Court

disagrees with Plaintiffs' characterization of the documents as confusing and deceiving. To the

contrary, Defendants' documents plainly state the terms of the [InSTORE] Program"). Although

the InSTORE program materials emphasize the benefits of arbitration while minimizing the

consequences in a manner somewhat akin to an advertisement, and although certain phrases in

those materials "might better have been avoide d," *Weiss*, 2018 WL 3409143 at *2, those rhetorical

choices do not render the materials so incomprehensible or ambiguous that they constitute an

invalid offer.

---

[6] (*See* Ex. B (Acknowledgement Form) to Ripak Decl. [Doc. # 12-1] at ECF p. 55 ("I understand that I have 30 days from my date of hire to review this information and postmark my form . . . if I wish to exclude myself from coverage under Step 4"); Ex. A (Brochure) to Ripak Decl. at ECF p. 30 ("If you decide you want to be excluded from participating in and receiving the benefits of Step 4, we need you to tell us in writing by completing the form enclosed in this brochure... within 30 days of your hire date"); Ex. A (Plan Document) to *id.* at 37 ("Associates are given the option to exclude themselves from Arbitration by completing an election form within the prescribed time frame"); Ex. A (Election Form) to *id.* at 32 ("During the 30 days following your hire date, you have the option to exclude yourself from being covered by Step 4 – Arbitration and its benefits.").

[7] *See supra* at n.7.

[8] (*See* Ex. A (Brochure) to Ripak Decl. [Doc. # 12-1] at ECF p. 30 ("When covered by Step 4 final and binding arbitration, you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; we both waive the right to civil action and a jury trial"); Ex. A (Election Form) to *id.* ("Issues at Step 4 are resolved by a professional from the American Arbitration Association in an arbitration process, rather than by a judge or jury in a court process. . . . The choice you make will stay in effect for the entire duration of your employment and afterwards.").

## 2. Acceptance

Plaintiff argues that he never intended to accept the arbitration offer, (Pl.'s Opp'n at 9-12), relying on the Restatement (Second) of Contracts § 69, which states that silence operates as acceptance where: (1) the offeror states or gives the offeree reason to understand that silence constitutes acceptance; and (2) the offeree, in remaining silent, intends his or her silence to constitute acceptance. *See John J. Brennan Constr. Corp., Inc. v. City of Shelton*, 187 Conn. 695, 710 (1982) (in Connecticut, "silence may constitute acceptance of an offer if the offeree, by his words or conduct, leads the offeror reasonably to interpret that silence as such."). Plaintiff proffers his Declaration in support of this argument: "By merely remaining silent, I certainly did not intend to lead Macy's to believe that I had committed to participate in any of the steps of the Solutions InSTORE program" (Ex. 1 (Davis Decl.) to Pl.'s Opp'n. [Doc. # 26-1] ¶ 7.)

However, several courts have found that the combination of an employee's acknowledgement of automatic enrollment in an optional arbitration program and his failure to opt out of the program can be a valid acceptance. *See e.g., Deleon v. Dollar Tree Stores, Inc.*, No. 3:16-cv-00767, 2017 WL 396535, at *3 (D. Conn. Jan. 30, 2017) (Haight, J.) (enforcing arbitration agreement where plaintiff employee accessed the online agreement on two occasions and did not terminate her employment or opt out of the program after receiving materials explaining her right to opt out). In *Crawley v. Macy's Retail Holdings, Inc.*, the district court interpreting the InSTORE program materials held that the employee "clearly, explicitly, and unequivocally agreed to arbitrate employment disputes" by signing the acknowledgement form and declining to complete the election form. No. 15-CV-2228, 2017 WL 2297018, at *5 (S.D.N.Y. May 25, 2017); *see also, e.g., Jayasundera v. Macy's Logistics & Operations*, No. 14-CV-7455, 2015 WL 4623508, at *4 (D.N.J. Aug. 3, 2015) ("Failure to opt out of an arbitration program after receiving notice is sufficient

8

conduct to signify acceptance."); *Burnett v. Macy's West Stores, Inc.*, No. 1:11-CV-01277, 2011 WL

4770614, at *3 (E.D. Cal. Oct. 7, 2011) ("In general, a person's silence or inaction does not

constitute acceptance of an offer. However, where circumstances…place[] the offeree under a duty

to act or be bound, his silence or inactivity will constitute his assent. Such was the case here."

(internal quotations and citations omitted)).

Here, Andrew Davis signed the acknowledgement form, reflecting his understanding that

if he did nothing, i.e., if he did not return the election form within 30 days of his hire date, he would

be agreeing to resolve all future disputes in arbitration. (*See* Ex. B (InSTORE New Hire

Acknowledgement) to Ex. 1 (Ripak Decl.) to Defs.'s Mem. [Doc. # 12-1] at ECF p. 55.) Thus,

Plaintiff's circumstance is not, as he argues, the same as a person receiving an unsolicited item in

the mail, doing nothing about it, and then receiving an invoice from the sender. While the Plaintiff

was silent, he was specifically informed of the consequence of silence and the Court finds his

inaction to constitute acceptance.

### 3. *Consideration*

Mutual promises to arbitrate are valid consideration. *Hellenic Lines, Ltd. v. Louis Dreyfus

Corp.*, 372 F.2d 753, 758 (2d Cir. 1967); *see also Teah v. Macy's Retail Holdings, Inc.*, No. 11-CV-

1356, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011) ("There is clearly consideration for the

arbitration agreement, as it binds both parties to arbitrate their claims . . ."). Here, Plaintiff argues

that there is no mutuality of obligation in the arbitration agreement because Defendant can

unilaterally modify or cancel that agreement[9] and is effectively not obligated to arbitrate disputes, rendering the agreement invalid for lack of consideration. (Pl.'s Opp'n at 18.)

However, under § 79 of the Restatement (Second) of Contracts, if "the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation.'" *State v. Lex Assocs.*, 248 Conn. 612, 619 (1999) (quoting the Restatement (Second) of Contracts § 79). Mutuality of obligation considers the relative equality of the parties' exchanges, while consideration requires only the presence of *any* exchange without regard to the *equality* of the exchanges.[10] Thus, in order for an agreement to be valid, the parties must each give and receive something, even if that which one party gives may be considered more objectively valuable than that which the other party gives. *See Osborne v. Locke Steel Chain Co.*, 153 Conn. 527, 532-33 (1966) ("The doctrine of consideration does not require or imply an equal exchange between the contracting parties. . . . The courts do not unmake bargains unwisely made.").

Applying state law consistent with § 79 of the Restatement to Defendant's arbitration materials, other courts have found sufficient consideration and no mutuality problem. *See Mount v. Macy's Retail Holding, Inc.*, No. 12-CV-1081, 2013 U.S. Dist. LEXIS 189793, at *14 (D.N.J. Jan. 8, 2013) (enforcing Macy's arbitration agreement where, "[t]o be sure, the parties here do not share

---

[9] "The Company may alter these Solutions InSTORE Early Dispute Resolution Rules and Procedures or cancel the program in its entirety upon giving thirty (30) days written notice to Associates." (Ex. A to Ripak Decl. [Doc. # 12-1] at 51.)

[10] *See* Restatement (Second) of Contracts § 79 cmt. c (discussing the role of "mutuality of obligation" in contract enforcement, stating that "[v]aluation is left to private action in part because the parties are thought to be better able than others to evaluate the circumstances of particular transactions. . . . Ordinarily, therefore, courts do not inquire into the adequacy of consideration . . . the requirement of consideration is not a safeguard against imprudent and improvident contracts except in cases where it appears that there is no bargain in fact.").

mutual, equivalent rights to alter arbitration procedures or opt out of arbitration at this time. . . .

However, New Jersey law does not require 'mutuality of obligation' in contracts, so long as the

consideration requirement is met.") The reasoning of *Mount* is appropriately applied to this case,

i.e., lack of mutuality of obligation is irrelevant as long as the arbitration agreement is supported

by consideration.

The arbitration agreement here is supported by valid consideration as it requires both

Plaintiff and Defendant to arbitrate employment-related disputes. That Defendant was free to

unilaterally modify or cancel the InSTORE program with thirty days' notice to employees does not

invalidate that consideration because, upon cancellation or modification, the arbitration obligation

still applies to all claims arising during the notification period. *See Rupert v. Macy's, Inc.*, No. 09-

CV-2763, 2010 WL 2232305, at *7 (N.D. Ohio June 2, 2010) (holding that Macy's arbitration

program was supported by valid consideration because, although Macy's was able to unilaterally

modify or cancel the program, it was at least bound to the original arbitration agreement for thirty

days following any modification or cancellation); *Mount*, 2013 U.S. Dist. LEXIS 189793 at *18

("The promise to abide by the unmodified rules for 30 days after written notice is sufficient

[consideration] to form a valid contract."). Plaintiff, therefore, cannot avoid arbitration on the

grounds that the agreement is not supported by consideration.

## B. Other grounds of unenforceability

The savings clause of the FAA allows courts to decline to enforce arbitration agreements if

there exist "such grounds . . . at law or in equity for the revocation of any contract." 9 U.S.C. § 2

(1947). Courts may decline to enforce otherwise valid arbitration agreements based on contract

defenses, such as fraud or duress. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). But,

since the FAA was designed to "place arbitration agreements upon the same footing as other

contracts," the court may not apply contract defenses in a way that disfavors arbitration in particular. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal quotations omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) ("Although § 2's savings clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives.").

Plaintiff argues that, to the extent that he did accept Defendant's offer, his acceptance was induced by fraudulent misrepresentations in the program materials. (Pl.'s Opp'n at 14-17; Pl.'s Supplemental Opp'n [Doc. # 43] at 3-7.) To survive a motion to compel arbitration on the basis of fraudulent misrepresentation, Plaintiff bears the burden of establishing: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did act upon that false representation to his injury. *Biro v. Matz*, 33 A.3d 742, 753 (Conn. App. Ct. 2011) (citing *Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Inv'rs, L.P.*, 260 Conn. 766, 777 (2002)). Plaintiff identifies six alleged misrepresentations in the InSTORE materials which fraudulently induced him to agree.

### 1. Claim of ACLU endorsement

Plaintiff claims that a statement in the brochure that the AAA "has been endorsed by the . . . American Civil Liberties Union . . . " (Ex. A (Program Brochure) to Ex. 1 (Ripak Decl.) [Doc. # 12-1] at ECF p. 31) is fraudulent. Defendant references law review articles in which Lewis Maltby, then-Director of the ACLU's National Task Force on Civil Liberties in the Workplace, purportedly

endorsed the AAA's arbitration procedures.[11] However, Plaintiff proffers Mr. Maltby's declaration

that he wrote the articles in his personal capacity, not on behalf of the ACLU. (Maltby Decl. ¶ 4.)

Defendant also points to a chapter from *Arbitration 2004: New Issues and Innovations in Workplace Dispute Resolution*, claiming that the ACLU endorsed the Due Process Protocol, a set

of uniform arbitration rules designed to promote fair proceedings and adopted by the AAA.[12] In

response, Plaintiff proffers the declaration of David Cole, the National Legal Director of the ACLU,

stating that "[w]e, at the ACLU National Headquarters, are unaware of the basis for Macy's claim

that the ACLU endorsed the AAA." (Ex. 2 (Cole Aff.) to Pl.'s Opp'n at 2.)

The parties further disagree over the materiality of Defendant's representation about the

ACLU. Plaintiff declares that a representation that the ACLU endorsed the AAA "would have been

a material representation to me when deciding whether to proceed in court or arbitrate." (Davis

Decl. ¶ 10.) Although Plaintiff concedes that he has only "passing familiarity" with the ACLU,

which might indicate that this representation would not have been material to his decision not to

opt out of the arbitration program, Plaintiff's knowledge of the ACLU as an organization that

---

[11] *See* Lewis L. Maltby, *Private Justice: Employment Arbitration and Civil Rights*, 30 Colum. Human Rights L. Rev. 29 (1998) (attached to Defendant's reply as Exhibit A); Lewis L. Maltby, *Employment Arbitration and Workplace Justice*, 38 U.S.F.L. Rev. 105 (2003).

[12] (*See* Ex. 2 (Golder Decl.) to Def.'s Supplemental Resp.; Ex. D to the Golder Decl. at 6 ("So [the Labor and Employment Law Section of the American Bar Association] assembled a group of designees from . . . [*inter alia*] the American Civil Liberties Union . . . The goal was to involve all the major players in the [alternative dispute resolution] field to craft a set of acceptance standards. Under the auspices of the American Arbitration Association, we met monthly in New York City and hammered out an agreement. On May 5, 1995, we agreed on the Due Process Protocol. . . . After we signed the Protocol as designees of the signatory groups, we went back to the organizations for approval or disapproval. All the organizations said that they liked it but wanted some changes. However, we gave everybody the choice of voting only up or down and all the organizations thereafter endorsed the Protocol.").)

works to preserve individual civil rights and liberties could suggest that its endorsement influenced his actions. (*See* Davis Decl. ¶ 10.)

However, even if the claim of ACLU endorsement was false and induced his agreement, Plaintiff's fraudulent inducement claim fails because he presents no evidence that Defendant knew that its representation was untrue. *See Biro*, 33 A.3d at 753. Ann Munson Steines, Senior Vice President, Deputy General Counsel, and Assistant Secretary for Macy's, Inc., was involved in the development of the InSTORE program as then-Operating Vice President and National Practice Leader of Employment Law and Executive Contracts for Macy's, Inc. (Ex. 1 (Steines Decl.) to Def.'s Supplemental Resp. [Doc. # 47-1] ¶¶ 2-3.) Ms. Steines explains that when the AAA agreed to administer Defendant's arbitration program on the condition that it did not materially depart from the Due Process Protocol, the AAA told Defendant that the Protocol "had been endorsed by the American Civil Liberties Union." (*Id.* ¶ 7.) She states that "Macy's relied on AAA's statements about the endorsements by the American Civil Liberties Union and the other organizations in creating the Solutions InSTORE Program brochures." (*Id.*) Plaintiff offers nothing to suggest that Defendant knew that its claim of ACLU endorsement was untrue at the time it was presented to Plaintiff as part of his new hire materials. (*See, e.g.*, Pl.'s Supplemental Opp'n at 3-7.) Because there is no evidence that Defendant was then aware of any falsity in its representation, Plaintiff's fraudulent misrepresentation defense fails as to the ACLU endorsement even if the representation was false and induced Plaintiff's reliance.

### 2. Other fraudulent misrepresentations

Plaintiff identifies five other allegedly fraudulent statements in the program materials as grounds on which the Court should not enforce the arbitration agreement. (Pl.'s Opp'n at 14-17.) However, Plaintiff has not met his burden of establishing the falsity of the alleged

14

misrepresentations. *See Biro*, 33 A.3d at 753 ("To assert a claim for . . . fraudulent inducement, [Plaintiff] must prove that [] a false representation was made as a statement of fact.")

First, Plaintiff claims that the representation that the "same remedies are available" in arbitration as in a court of law, (Ex. A to Ripak Decl. [Doc. # 12-1] at ECF p. 30), is fraudulent because the arbitration rules preclude injunctive relief, including reinstatement of a wrongfully discharged employee, (*id.* at 48).

Plaintiff has not shown that arbitration through the InSTORE program cannot provide the "same remedies" as in-court litigation. Plaintiff points to the text of the program materials[13] in support of this assertion, noting correctly that those materials do not give the arbitrator authority to "alter the Associate's employment status." (Pl.'s Opp'n at 15.) However, the materials also provide the example of "requiring that the Company have 'cause' to discipline or discharge an Associate[,]" (Ex. A to Ripak Decl. [Doc. # 12-1] at ECF p. 48), as the type of change in employment status which the arbitrator may not order. In other words, an arbitrator simply may not change an employee from one who may be disciplined or fired at will to one who may only be disciplined or fired for cause. (Pl.'s Reply [Doc. # 29] at 6.) Insofar as Plaintiff claims that the program materials demonstrate that an arbitrator could not order relief "such as reinstatement or reassignment, all of which a court could certainly order[,]" (Pl.'s Opp'n at 15), Plaintiff's argument is contradicted by the text of those materials which indicates that an arbitrator may "change the terms and conditions

---

[13] "The arbitration procedure contained herein does not alter the Associate's employment status . . . Accordingly, the Arbitrator shall have no authority to alter the Associate's employment status by, for example, requiring that the Company have 'cause' to discipline or discharge an Associate. Nor may the arbitrator otherwise change the terms and conditions of employment of an Associate unless required by federal, state or local law, or as a remedy for a violation of applicable law by the Company with respect to the Associate." (Ex. A to Ripak Decl. [Doc. # 12-1] at ECF p. 48.)

of employment of an Associate" if "required by federal, state or local law, or as a remedy for a violation of applicable law by the Company with respect to the Associate." (Ex. A to Ripak Decl. [Doc. # 12-1] at ECF p. 48.) In the absence of other allegations as to how the "same remedies" claim is untrue, (see Pl.'s Opp'n at 15), Plaintiff has failed to demonstrate the falsity of that claim.

Second, Plaintiff claims that the brochure represents that it would cost an employee more money to bring a claim in court than under arbitration, and that this representation is fraudulent because class actions are often handled on a contingency fee basis, imposing no up-front costs on a plaintiff employee. (Id.)

Plaintiff has not shown that the program materials' representations regarding comparative cost of arbitration and litigation are false. Plaintiff disputes generally "Macy's representation that a litigant would have to pay higher filing fees and costs to proceed in Court and that the $2500 attorney fee reimbursement available under the Solutions InSTORE program was somehow a benefit to Plaintiff." (Id.) However, the plan documents accurately indicate that the cost to file a complaint in federal district court is well over the $125 cost to file for arbitration through InSTORE. (Ex. A to Ripak Decl. [Doc. # 12-1] at ECF p. 30.) Though it may be true that class actions are often handled on a contingency fee basis as Plaintiff argues, (Pl.'s Opp'n at 15), that assertion does not contradict the program materials' straightforward assertion that employees will receive "up to $2,500" per year in legal financial benefits if pursuing arbitration and will receive no reimbursement if pursuing litigation. (Ex. A to Ripak Decl. [Doc. # 12-1] at ECF p. 30.) Moreover, not all litigation, whether class action or individual, is likely to be handled on a contingency fee basis with no cost to a plaintiff employee. Plaintiff has failed to demonstrate the falsity of the materials' assertions about filing costs.

Third, Plaintiff claims that the brochure's representation that a claim raised in court would be heard by "[a] judge who may not specialize in employment law[,]" (*id.*), is fraudulent because judges are typically "well versed in employment law." (Pl.'s Opp'n at 16.)

The brochure's representation is not false. Though Plaintiff is correct that many judges are well-versed in employment law, it is certainly possible that a claim would be heard by a judge who does not "specialize" in that field. Despite Plaintiff's claim to the contrary, Defendant's representation does not "make[] the false assertion that judges are unfamiliar with employment law" or that "a case might not get a fair hearing in court[,]" (Pl.'s Opp'n at 16)—it simply presents the employee with the opportunity to ensure their claim is heard by a substantive specialist. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.").

Fourth, Plaintiff claims that the brochure's representation that, in arbitration, "if the decision is in your favor, **you** receive the benefits, not your lawyer[,]" (Ex. A to Ripak Decl. [Doc. # 12-1] at ECF p. 29) (emphasis in original)), is fraudulent because, in court, attorney's fees are awarded by statute, not subtracted from the overall award.

Plaintiff contends that the materials "assert[] that in a court case, the attorney would receive the award, rather than the party." (Pl.'s Opp'n at 16). Though the program materials do not clearly state that a lawyer will receive the damage award obtained through litigation, this portion of the brochure may imply that assertion. To the extent that such a representation is implied, Plaintiff has not demonstrated that it is false. Plaintiff notes correctly that plaintiffs' attorneys may be entitled to separate attorneys' fees by statute, but also acknowledges that "if no statutory fees are

17

recovered, and an attorney is working on a contingency fee basis, she would be entitled to a fee from the award, regardless of whether the award was rendered by an arbitrator or a court." (Pl.'s Opp'n at 15.) The InSTORE program materials undoubtedly do not present a complete analysis of the comparative financial merits of arbitration and litigation, but insofar as they imply that plaintiff employees may owe their attorneys a portion of a damage award obtained through litigation, they do not make a factual misrepresentation.

Fifth, Plaintiff claims that the depiction of the arbitration step as "fair and neutral[,]" (*see id.* at 23), is fraudulent because it fails to consider the purported financial conflict of interest that the AAA has to favor Defendant so that it will continue to use the AAA's services.

Defendant argues correctly that Plaintiff cannot establish that the program materials' depiction of the arbitration process as "fair and neutral" was false through claims of a hypothetical conflict of interest unsupported by specific evidence. (Def.'s Reply [Doc. # 29] at 7.) The Supreme Court routinely rejects general and conjectural allegations of arbitrator bias, declining to "indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)).

Plaintiff also has not demonstrated that any of the alleged misrepresentations were "known to be untrue" by Defendant, as is required for the contract defense of fraudulent misrepresentation. (*See generally* Pl.'s Opp'n at 14-14.) *See Biro*, 33 A.3d at 753. In the absence of evidence that the program materials were false and that Defendant knew they were false, Plaintiff's claims of fraudulent inducement fail.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Proceedings is GRANTED. The clerk is directed to stay the case pending arbitration.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of September 2018.